RAWLS, Chief Judge.
In this action which sounds in malicious prosecution, appellant-plaintiff Meredith was successful in procuring a jury verdict and final judgment in the sum of $5,300.00 against appellee-defendant McNeal. Meredith’s allegations basically charged McNeal with malice in: 1) instituting proceedings for inquisition of her incompetency; 2) instituting proceedings for her detention in connection with such incompetency; and 3) accusing her of, and bringing charges against her, for the crime of grand larceny. In post trial proceedings the trial court reversed its prior rulings upon defendant’s motions for directed verdict and dismissed with prejudice plaintiff’s claims which were based upon the proceedings instituted by defendant for inquisition of plaintiff’s incompetency and for her confinement in such proceedings; and granted a new trial upon the allegations relating to the accusation and charge of grand larceny. The basic ground for the post trial order was:
“There was, therefore, not a bona fide termination, nor could there be a bona fide termination, in favor of Plaintiff of either the proceedings for inquisition of competency of Plaintiff, nor for her confinement in connection therewith. It was accordingly, error to deny the motions of Plaintiff for directed verdict upon the issues concerning the proceed *180 ings relating to her alleged incompetency and for her confinement.”
The primary point on appeal posed by appellant is:
“Whether, if bona fide termination in favor of plaintiff is essential to recovery in an action for malicious institution of insanity proceedings, there was evidence sufficient to support jury finding of such termination as to proceedings commenced by defendant for inquisition of plaintiff’s incompetency.”
From the record before us, this action arose out of a squabble between Bonnie Lowe Meredith and her paramour A. T. McNeal. Bonnie was living across the street from A. T.’s used car lot in a home rented by A. T. Upon the dissolution of this non-marriage, Bonnie attempted to move out of the rented house, which had been “posted” by A. T., and a controversy ensued as to ownership of certain household articles. A petition for inquisition of incompetency was filed by A. T. (joined by two other citizens) setting forth the nature of her alleged disability as an “inadequate personality”. Concurrently with the petition for inquisition of incompetency, an affidavit was executed by A. T. which stated in part that:
“. . . [Djeponent is of the firm belief that the public safety and/or the safety of the alleged incompetent requires the immediate issuance of an order by this Court directing the Sheriff of Marion County, Florida, forthwith to confine said alleged incompetent in some specified place pending further proceedings herein and/or the further order of this Court. [Emphasis supplied]
“Deponent bases this request for an order of immediate detention of the alleged incompetent on the following facts: Has taken a large amount of drugs and is also drinking; could be harmful to herself and her children.”
As a result of the affidavit, Bonnie was taken into custody while working at a restaurant and incarcerated in a jail from approximately 7:00 p. m. until 10:00 p. m., when she was released upon her own recognizance.
Pursuant to a Motion to Dismiss or Dissolve Order of Detention filed by Bonnie’s attorney, the county judge, after hearing numerous witnesses, entered an Order of Dismissal and Discharge wherein he found, inter alia:
“The Court has considered the evidence presented by the alleged incompetent and the said A. T. McNeal, Jr., Don Mc-Spadden and Don Stalvey, and finds the existence of no circumstances which, for the public safety and/or the safety of the alleged incompetent, requires the detention of the said alleged incompetent, and that no good cause exists or has existed for her detention as required by the Order of Detention, heretofore filed herein.” [Emphasis supplied]
Subsequently, the county judge entered an Order Dismissing Petition for Inquisition of Competency wherein he found, inter alia:
“The Court has considered the evidence presented by the alleged incompetent, and the testimony of the alleged incompetent and the said A. T. McNeal, Jr., together with unsworn statements by the said Don McSpadden and Don Stalvey. Having granted said Petition, and by Order of Dismissal and Discharge entered November 24, 1971, having dissolved and vacated said Order of Detention, and having discharged and released said alleged incompetent from any requirement of said Order of Detention, the Court thereupon heard and considered the oral motion of said alleged incompetent, by her attorney, for dismissal of the proceedings consequent upon the Petition filed herein on October 27, 1971, by the said A. T. McNeal, Jr., Don Stal-vey and Don McSpadden, for the inquisition into the competency of the said Bonnie Lowe Meridith. .[sic] Upon the evidence presented, the Court finds that the mental and physical condition of the said Bonnie Lowe Meridith [sic] is not such as to justify the belief that she is incompetent within the intent and mean *181 ing of Chapter 394, Florida Statutes, as amended, and that the motion of the said alleged incompetent for dismissal of such proceedings, ought to be granted.” [Emphasis supplied]
It is upon the foregoing factual background that the instant civil cause is founded. The trial judge in the judgment appealed found:
“Evidence was received at the trial which, viewed most favorably to Plaintiff, supports the jury finding, implicit in the verdict for Plaintiff, that the criminal proceedings described in the evidence, as well as the proceedings for inquisition of incompetency and for detention, were commenced against Plaintiff, that such commencement was caused by Defendant McNeal, that there was an absence of probable cause and a presence of malice in the commencement of the same, and that they resulted in damage to the Plaintiff; also, that the criminal proceedings resulted in a bona fide termination in favor of Plaintiff. The effect of the verdict for Plaintiff was the further finding, under instructions given by the Court upon Plaintiff’s request, but over Defendant McNeal’s objection, that there was a bona fide termination in favor of Plaintiff of the proceeding for inquisition of incompetency and for the detention of Plaintiff.”
So, the gist of this appeal is: Were the orders entered in the inquisition proceedings a bona fide termination of same in favor of the Plaintiff?
Appellee insists that the mandatory provisions of Florida Statutes 394.22(5) (1971) and 394.22(6) (1971) require that if detention is ordered, the trial judge must confine the alleged incompetent for medical observation and examination (not to exceed fifteen days, unless good cause is shown for extension), and that it is mandatory that the judge appoint an examining committee. Appellee then reasons, apparently, that the committing judge is without jurisdiction to act until the examining committee reports. As to the foregoing thesis, apparently the trial judge relied strongly upon Hughes v. Blanton, 120 Fla. 446, 162 So. 914 (1935). The question in Hughes went only to the county judge’s jurisdiction to reconsider a question already ruled upon; that is, the legal sufficiency of the petition on its face.
Further, the statutory procedure for inquisition proceedings has been changed in many respects. In 1935, the statute provided for a hearing only when the supposed insane person requested it. The law in force when this appellant was incarcerated required that the county judge set a date for an immediate or very early hearing, and if the judge finds that such person is not incompetent, he shall dismiss the cause and discharge the person. We do not construe the overall statutory scheme as mandatorily requiring an examining committee prior to discharge by the judge. Elementary concepts of due process would dissipate into a legal flimflam if a committing judge, who found that he had erroneously relied upon the malicious sworn statements of a citizen (joined by two other citizens) and as a result thereof had erroneously caused another citizen to be summarily incarcerated, found his hands tied into a legal knot and was not able to unravel the Gordian knot of illegal incarceration without the testimony of a statutory examining committee.
As in each appellate decision, the essential facts must be kept in mind. Here, the inquisition petition set out a bare allegation of “inadequate personality”. The petition did not set forth any names of the members of the alleged incompetent’s family.[1] The petition for detention referred solely to the alleged usage by Bonnie of drugs and excessive alcohol, the determination of which was a proper subject for hearing testimony of witnesses who know the facts. Obviously, from this record, the allegations of “inadequate personality” were founded *182 primarily upon the ill feelings of a disgruntled ex-boyfriend.
The county judge might well have been advised to have more adequately inquired, prior to summarily putting into progress the drastic companion summary proceedings of inquisition of incompetency and Order of Detention; however, many situations require instanter action and, consequently, the judge must of necessity rely strongly upon the presumption of “men of good will” when confronted with such petitions. But we refuse to hold that a judge, who after being advised that the powers of his office have been utilized for malicious purposes, is without jurisdiction to rectify his initial error. And that is exactly what the county judge did with regard to the subject inquisition proceedings, and he is to be commended for his bona fide termination of the matter, as is evidenced by the jury’s verdict in the instant case.
The judgment appealed is reversed with directions that the jury verdict and judgment thereon be reinstated.
JOHNSON and McCORD, JJ., concur.

. Testimony of witnesses recited numerous contacts by A. T. McNeal with Bonnie’s mother and father who resided in another state.